**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JESSICA SCHOLFIELD, | CASE NO. 3:24-CV-00070-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | JENNIFER DOWDELL |
| SECURITY, | ARMSTRONG |
| Defendant. | **REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

Plaintiff Jessica Scholfield ("Ms. Scholfield") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income Benefits ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated January 11, 2024). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.  PROCEDURAL HISTORY

Ms. Scholfield previously received SSI benefits pursuant to an April 20, 2006 determination that she was disabled beginning on September 27, 2005. (Tr. 139). On May 9, 2016, the SSA determined that Ms. Scholfield was no longer disabled because her condition had improved. *Id*. Ms. Scholfield requested a hearing before an ALJ, ALJ Banks, who issued a decision on April 18, 2019 finding that Ms. Scholfield was not disabled. (Tr. 136). That

decision became final on April 30, 2020, when the Appeals Council declined further review. (Tr. 156).

Ms. Scholfield filed a new application for SSI on June 18, 2020, alleging an onset date of September 19, 2005. (Tr. 378). Ms. Scholfield's application related to her learning disability; post-traumatic stress disorder ("PTSD"); anxiety/panic disorder; bipolar disorder; and psychosis/paranoia. (Tr. 492).

The Social Security Administration ("SSA") denied Ms. Scholfield's application initially and upon reconsideration. (Tr. 162, 171). Ms. Scholfield requested a hearing before an administrative law judge ("ALJ"). (Tr. 221-226). ALJ Sher held a hearing on July 14, 2021, at which Ms. Scholfield was represented by counsel. (Tr. 82). Ms. Scholfield testified, as did an independent vocational expert ("VE"). On August 26, 2021, the ALJ issued a written decision finding that Ms. Scholfield is not disabled. (Tr. 179).

Ms. Scholfield requested review of the ALJ's decision. (Tr. 290). On August 17, 2022, the Appeals Council remanded the case to the ALJ for further review, identifying the following error in the ALJ's decision:

> The hearing decision is inconsistent in terms of its application of Acquiescence Ruling (AR) 98-4(6) (*Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)). AR 98-4(6) requires an Administrative Law Judge (ALJ) to adopt the findings of a prior ALJ's hearing decision unless new and material evidence shows a change in circumstance to justify new findings or these has been a change in law or regulation. Further, decisions in cases in which the AR applies, must refer to the AR and include rationale indicating why any new evidence is or is not material to a particular finding (HALLEX I-5-4-62). The record shows that a prior decision was issued on April 18, 2019 (Exhibit B1A). In considering the prior decision, the ALJ finds that new and material evidence was submitted that supports a change to some extent in the assessment of the claimant's residual functional capacity (Decision, pages 1-2). However, despite finding that a change is supported, the assessed residual functional capacity (RFC) in the current claim is the same

2

as that assessed in the prior decision (Finding 4; Exhibit B1A, page 8). The ALJ's finding, therefore, with regard to AR 98- 4(6) is inconsistent, and the decision does not provide additional rationale as to why the same RFC was assessed. Further consideration appears warranted with regard to AR 98- 4(6) and the claimant's maximum residual functional capacity.

(Tr. 202). The Appeals Council instructed the ALJ to: (1) give further consideration to the application of Acquiescence Ruling 98-4-9(6); (2) give further consideration to Ms. Scholfield's residual functional capacity; and (3) if warranted, obtain supplemental evidence from a VE. (Tr. 203).

Following remand, the ALJ held another hearing on December 6, 2022, at which Ms. Scholfield and a VE testified. (Tr. 40). On December 21, 2022, the ALJ issued a written decision, again finding that Ms. Scholfield is not disabled. (Tr. 7). The ALJ's decision became final on November 15, 2023, when the Appeals Council declined further review. (Tr. 1).

On January 11, 2024, Ms. Scholfield filed her Complaint, challenging the Commissioner's final decision that Ms. Scholfield is not disabled. (ECF No. 1.) Ms. Scholfield asserts the following assignments of error:

(1) Was ALJ Sher's Finding No. 4 with significant changes to RFC/MRFCA compliant with AR98-4(6), *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 54 Soc. Sec. Rep. Serv. 296, Unempl Ins. Rep. (CCH) ¶ 15792B Fed. App. 0292P (6th Cir. 1997), where Finding No. 4 contains different limitations from Sher's and Banks' prior decision, and thereby, not based on substantial evidence?

(2) Is ALJ's reliance on hypothetical to VE, Finding No 4, Tr.17, and VE testimony to deny Plaintiff benefits at step 5 of the sequential evaluation based on an inaccurate VE hypothetical and not based on substantial evidence?

(a) Do limitations set forth in ALJ hypothetical and VE responses relied upon by Defendant fully and accurately incorporate all reasonably supported limitations, rendering Finding No. 4, based on substantial evidence?

(b) Did Defendant fail to properly evaluate supportability, consistency, and persuasiveness, thereby improperly rejecting Dr. Subrato Roy's mental assessment and MRFCA giving it no weight contrary to law, record,

3

Plaintiff's testimony and longitudinal treatment of Plaintiff?

(c) Is ALJ's reliance on VE testimony to hypothetical and resulting Finding No. 4, based on inaccurate hypothetical, failing to contain all reasonably documented limitations to support Defendant's decision by substantial evidence?

(ECF No. 9, PageID # 1304).

## III.    BACKGROUND

### A.    <u>Personal, Educational, and Vocational Experience</u>

Ms. Scholfield was born in 1990 and was 29 years old on the date of her application. (Tr. 378). She has a high school degree (Tr. 55). She is separated and has four children. (Tr. 49-50). She has no past relevant work. (Tr. 56).

### B.    <u>Relevant Hearing Testimony</u>

#### 1.    *Ms. Scholfield's Testimony*

Ms. Scholfield testified that she experiences both delusions and hallucinations. (Tr. 59). Her delusions result in paranoia and her being out of touch with reality, while her hallucinations result in her hearing voices. *Id*. She testified that she is taking a new medication for her delusions and hallucinations, which helps her somewhat. (Tr. 58-59). However, she also testified that her hallucinations are worse than they were two years ago. (Tr. 72). She testified that, when she is outside, she has to tell herself that what she is hearing is not real. (Tr. 74). She also testified that she only sleeps two to three hours per night because she experiences nightmares, and that she sleeps for two to four hours during the day as well. (Tr. 63, 71). She further testified that she was hospitalized on multiple occasions in 2005 as a result of her symptoms, but that she has not had any recent hospitalizations. (Tr. 68).

Ms. Scholfield testified that she also experiences social anxiety and panic attacks. (Tr. 56). She testified that she has panic attacks four or five times per day, during which she has

4

difficulty breathing and feels disoriented and overwhelmed. *Id*. She also testified that each panic attack lasts 45 minutes to an hour. (Tr. 57). Ms. Scholfield further testified that she has received shots of Abilify every three weeks for a year because her condition has worsened. (Tr. 56-57). She also testified that her medications help somewhat with her panic attacks, although the Abilify shots begin to wear off after a week or so. (Tr. 57). She further testified that she experiences depression, and that she typically wears pajamas and sometimes does not shower. (Tr. 73). Ms. Scholfield testified that her symptoms were better the previous August, but that she had experienced a decline over the last four to five months. (Tr. 58).

Ms. Scholfield lives with her fiancé and her four children. (Tr. 50). She testified that she leaves her house three to four times per month for doctors' appointments and to get a monthly shot. (Tr. 54). When she goes to her appointments, she does not sit in the waiting room, but rather in a separate room that the doctor's office sets up because of her paranoia. (Tr. 60). She testified that her fiancé does the grocery shopping and that she has never taken the bus. (Tr. 55). Ms. Scholfield also testified that she cannot be around more people than her kids and her fiancé at any one time, and that she does not interact with her fiancé's family. (Tr. 60).

Ms. Scholfield testified that, on a typical day, she will help one of her sons get ready for school. (Tr. 64). She testified that she dresses him and brushes his teeth, though she cannot perform those tasks all the time due to her panic attacks. (Tr. 61-62). After the children go to school, she testified that she cleans the house, but that she has trouble focusing on one thing. (Tr. 64). She also testified that she plays with her children. *Id*. She testified that she does not have any hobbies, but that she will sometimes watch television, although she has difficulty focusing on what she is watching. (Tr. 65). She also testified that she pays bills by phone,

though her fiancé needs to remind her when the bills are due. (Tr. 66).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Scholfield's age, education, and experience who could perform work at any exertional level but who was limited to performing simple, routine, and repetitive tasks; could not perform work at a production rate pace; was limited to simple work-related decisions; could handle no more than occasional changes in the workplace that were infrequent and well-explained in advance; was limited to occasional contact with supervisors, occasional and superficial contact with coworkers, and no contact with members of the public, with "superficial" defined as able to be in the proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion; and could not perform tandem tasks. (Tr. 76). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a marker, mail clerk, or routing clerk. (Tr. 76-77).

The ALJ next asked the VE if jobs would still be available for hypothetical individual if the individual could work around no more than five other individuals at a time. (Tr. 77). The VE testified that the additional limitation would be work preclusive. (Tr. 78). The VE also testified that it would be work preclusive if the hypothetical individual would be off task 11% of the workday or more or would be absent from work two days per month. (Tr. 78-79). In response to a question from Ms. Scholfield's counsel, the VE also testified that it would be work preclusive if the hypothetical individual had marked limitations in a number of mental functional categories. (Tr. 780).

**C.      Relevant Opinion Evidence**

    *1.      Subrata Roy, M.D.*

On May 28, 2021, Dr. Roy completed a mental residual functional capacity assessment for Ms. Scholfield. (Tr. 931). Dr. Roy diagnosed Ms. Scholfield with schizoaffective disorder, depressive type; and PTSD. (Tr. 937). Dr. Roy also opined that Ms. Scholfield experiences depression, anxiety, and paranoia. (Tr. 936). Dr. Roy further opined that Ms. Scholfield is very depressed, tearful, hopeless, very paranoid, unable to go out in public or maintain gainful employment, subject to frequent auditory hallucinations, anxious, unable to relax, and jittery/restless. *Id*. Dr. Roy opined that Ms. Scholfield's conditions were chronic and that her prognosis was fair. (Tr. 937).

Dr. Roy opined that Ms. Scholfield has moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. (Tr. 932-33). Dr. Roy further opined that Ms. Scholfield has marked limitations in her ability to interact appropriately with the general public; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. (Tr. 933).

Dr. Roy submitted an updated residual functional capacity assessment on October 21,

2022, largely reiterating the same limitations. (Tr. 1245-51). Dr. Roy also opined that Ms. Scholfield's prognosis was fair to poor. (Tr. 1247).

The ALJ found that Dr. Roy's opinions were unpersuasive because they were inconsistent with Ms. Scholfield's hearing testimony and treatment records, including Dr. Roy's own treatment notes. (Tr. 23).

### 2. *State Agency Psychological Consultants*

On September 1, 2020, Kristen Haskins, Psy.D., a state agency psychological consultant, opined on initial review that Ms. Scholfield has moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others; make simple work-related decisions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. (Tr. 167-68). Dr. Haskins also opined that Ms. Scholfield is limited to routine, one-to-three step tasks; is capable of routine, simple, short cycle work tasks that do not require fast pace or production quotas; can superficially interact in the work setting; and can carry out an ordinary routine despite minor changes in the work setting without difficulty, but that major changes need to be identified in advance and then gradually introduced. *Id*.

On January 20, 2021, Ermias Seleshi, M.D., opined on reconsideration that, while Ms. Scholfield alleged worsening symptoms, recent records did not reflect significant changes. (Tr. 177). Dr. Seleshi also opined that Dr. Haskins' initial findings were consistent with and supported by the evidence. *Id*. Dr. Seleshi further opined that Ms. Scholfield can understand,

remember, and follow simple one-to-three step instructions for routine tasks; perform routine tasks without demand for sustained close concentration, fast pace, or high production standards; interact with others on a brief, intermittent, and superficial basis; and adapt to work in a stable setting with predictable expectations and infrequent changes that are well explained and introduced gradually. (Tr. 176-77). The ALJ found that the opinions of the state agency psychologists were persuasive. (Tr. 24).

### D.  <u>Relevant Medical Evidence</u>

On June 28, 2019, Ms. Scholfield had a psychiatric telehealth visit at Coleman Behavioral Health. (Tr. 616). She reported experiencing paranoia and anxiety. *Id*. It was noted that she was receiving injections of Abilify. *Id*. She was also started on Propranolol and Trazodone. *Id*. On examination, she displayed a depressed mood and a constricted affect, with delusions, normal eye contact, logical thought processes, unremarkable cognition, and fair insight and judgment. (Tr. 618). Her current level of risk was "medium." (Tr. 618). It was noted that she had diagnoses of PTSD, generalized anxiety disorder, borderline personality disorder, and bipolar disorder. (Tr. 620).

On August 27, 2019, Ms. Scholfield reported some improvement. (Tr. 623). She said that she was not as scared when she left the house, but that she continued to experience paranoia. *Id*. She denied hallucinations or delusions, and no overt psychosis was noted. *Id*. She was prescribed Zyprexa for her anxiety and paranoia, and the frequency of her Abilify was increased. *Id*. Examination revealed unremarkable thought content, logical thought processes, normal speech and eye contact, unremarkable cognition, and fair insight and judgment. (Tr. 625-26).

On October 17, 2019, Ms. Scholfield underwent pre-hospital screening at Coleman

Behavioral Health. (Tr. 600). She reported that she had experienced problems with anxiety for a year, and that she was not leaving the house. *Id*. She also reported racing thoughts and panic attacks. *Id*. She stated that she did not believe she was on the right medication. *Id*. She reported that she was going to experience an episode of psychosis and that she was "fighting it." *Id*. She also said that she felt like she was losing touch with reality and that it was disorienting. *Id*. She reported that her last psychotic break occurred approximately six years previously. *Id*. She denied any suicidal thoughts, intent, or planning but reported suicidal ideation in the past. (Tr. 601-02).

Ms. Scholfield had another follow-up visit the next day. (Tr. 630). She was positive for delusions, but displayed logical thought processes, normal speech, eye contact, and associations, unremarkable cognition, and fair insight and judgment. (Tr. 632-33). It was noted that she was isolating and experiencing paranoia and night terrors. (Tr. 633). She was started on Prazosin and Lamictal. (Tr. 630). On October 29, 2019, Ms. Scholfield reported mild improvement in her mood and anxiety with Lamictal. (Tr. 637). Her Propranolol was increased. *Id*.

On November 26, 2019, Ms. Scholfield reported that she was continuing to isolate herself due to her anxiety. (Tr. 645). She also reported feeling like her propranolol was wearing off over the course of the day. *Id*. Her medication was increased as a result. *Id*. She denied experiencing hallucinations. *Id*.

On January 21, 2020, Ms. Scholfield reported that she was still experiencing severe social anxiety. (Tr. 653). She also reported that her medications were working pretty well and that she needed to force herself to go out into the world. *Id*. On examination, she was positive for delusions and had continued, but improving, paranoia. (Tr. 656). She also displayed

unremarkable cognition, fair insight and judgment, a normal fund of knowledge, and logical thought processes. (Tr. 655-56).

On February 17, 2020, Ms. Scholfield had an initial counseling session. (Tr. 596). She reported that she had not been able to leave her house, and also reported low self-esteem, negative and distorted thinking, people-pleasing, and poor boundaries. (Tr. 597). On examination, she was well-groomed, cooperative, preoccupied, and restless, with a full affect, average eye contact, logical thought processes, and no delusions or hallucinations. (Tr. 596-97). Her mood was anxious but brightened upon interaction. (Tr. 596). Stabilization of her mental status and functioning were described as "fragile." (Tr. 597).

On March 26, 2020, Ms. Scholfield reported that she was having more success controlling her anxiety and panic attacks after her Propranolol was recently adjusted. *Id*. She also reported that her other medications were working well. *Id*. She said that her mood was stable, her depression was not too severe, and her anxiety was present but more tolerable. *Id*. On examination, she displayed logical thought processes, unremarkable thought content and cognition, normal associations, and fair insight and judgment. (Tr. 663-64).

On May 28, 2020, Ms. Scholfield reported waking up in a sweat and shaking at night. (Tr. 667). She also reported that her mood was fairly good but that she was unable to go outside. *Id*. She said that she was terrified to be around others due to her anxiety and that she spent all her time at home with her kids. *Id*. She denied auditory hallucinations. *Id*. She displayed a good mood, a reactive affect, logical thought processes, unremarkable thought content, fair insight and judgment, and a normal fund of knowledge. (Tr. 669-70).

On June 23, 2020, Ms. Scholfield reported increasing paranoia and anxiety. (Tr. 673). She said that she was not venturing outside or going to stores and that she was continuing to

isolate. *Id*. She reported that her hallucinations were not bad, and that she only heard voices on occasion at night. *Id*. She also reported that the voices were not bothersome. *Id*. She was prescribed Rexulti to treat her increasing paranoia and anxiety. *Id*. On examination, she was positive for delusions, with logical thought processes, a good mood and reactive affect, fair insight and judgment, and unremarkable cognition. (Tr. 675-76).

On August 8, 2020, a "crisis plan" was developed. (Tr. 809). Ms. Scholfield reported that she last heard voices two months previously but that she felt paranoid when out in public. *Id*. She also reported increased depression, crying, low energy, apathy, feelings of guilt and shame, increased anxiety, irritability, and wanting to sleep all the time. *Id*.

On August 25, 2020, Ms. Scholfield reported continuing paranoia and high anxiety. (Tr. 746). She also reported that she continued to isolate, that she was unable to spend quality time with her family, and that she could not go into stores or be around other people. *Id*. Klonopin was added to her prescriptions. *Id*. On September 22, 2022, Ms. Scholfield reported that Klonopin had provided her some relief from her anxiety, although she still could not leave the house and still felt somewhat paranoid. (Tr. 753).

On October 8, 2020, Ms. Scholfield presented to Coleman Behavioral Health for a referral regarding "high intensity needs" as a result of increased stress and symptoms. (Tr. 782). It was noted that Ms. Scholfield was being treated for bipolar disorder, PTSD, generalized anxiety disorder, and borderline personality disorder, and was taking several medications, including Lamictal, Celexa, Abilify, Zyprexa, Trazodone, Klonopin, Propranolol, and Prazosin. *Id*. Ms. Scholfield denied experiencing current auditory or visual hallucinations and denied suicidal or homicidal intent. *Id*. She reported that she had experienced psychosis in the past, and that she sees shadows and hears whispering female

voices. *Id*. She reported that the last time she heard voices was two months prior. *Id*. She also reported feeling very paranoid when she was out in public. *Id*. On examination, Ms. Scholfield was cooperative, preoccupied, and restless, with normal eye contact, a flat and constricted affect, logical and circumstantial thought processes, and preoccupied thought content. (Tr. 782-83). She was alert and oriented, and her insight and judgment were fair. *Id*.

On October 22, 2020, Ms. Scholfield reported that her anxiety remained high and that she was not leaving the house frequently. (Tr. 760). She reported that Klonopin gave her relief for approximately two hours. *Id*. She also reported that the counseling she received was somewhat helpful. *Id*. She reported experiencing some paranoia. *Id*. She rated her depression as a five out of ten and her anxiety as an eight out of ten. *Id*. She presented with an anxious mood, delusions, hallucinations, logical thought processes, unremarkable cognition, and fair insight and judgment. (Tr. 762-63). It was noted that she was paranoid and that she heard some voices, usually at night. (Tr. 763).

Ms. Scholfield underwent a diagnostic assessment on November 3, 2020. (Tr. 700). She reported that her anxiety had been high. *Id*. She also reported recent auditory hallucinations and fleeting suicidal ideation. (Tr. 705-06). On examination, she was positive for hallucinations, but also displayed logical thought processes, clear speech, normal eye contact, and unremarkable cognition. (Tr. 709-10).

On November 19, 2020, Ms. Scholfield reported that she was under a lot of stress because her son might lose his SSI benefits. (Tr. 767). She reported that her mood was very unstable and her anxiety high. *Id*. Her Lamictal was increased to improve mood regulation. *Id*. She displayed delusions and hallucinations, an anxious mood, logical thought processes, fair insight and judgment, unremarkable cognition, and a normal fund of knowledge. (Tr. 769-

70). On December 17, 2020, she again reported stress due to Social Security issues. (Tr. 775). However, she also reported that her medications were working as well as they could under the circumstances. *Id*.

On January 14, 2021, Ms. Scholfield reported stress regarding her finances and restoring her SSI benefits. (Tr. 867), She also reported attending therapy and trying to leave her house more, but said that she had not been successful. *Id*. She also said that her depression was bad as a result of her situation. *Id*. On March 16, 2021, Ms. Scholfield reported that she had not left her house in over a month, and that the last time she left the house was because she had to get new glasses. (Tr. 893). Ms. Scholfield reported that her depression and anxiety had been exacerbated because her SSI application had been denied. *Id*. She rated her anxiety as a six or seven out of ten and her depression as a six out of ten. *Id.* On May 13, 2021, Ms. Scholfield reported that her depression and anxiety had worsened. (Tr. 913). She denied hearing voices, but reported experiencing paranoia, particularly when she left the house. *Id*.

On May 28, 2021, Ms. Scholfield reported that she was feeling paranoid and was very depressed. (Tr. 949). On examination, Ms. Scholfield was alert and oriented, cooperative, and in moderate distress. (Tr. 951). Her thought processes were logical and her cognition was unremarkable, but her thought content was positive for delusions and hallucinations and her insight and judgment were limited. (Tr. 951-52).

On August 30, 2021, Ms. Scholfield reported that she was very depressed because her SSI application had been denied. (Tr. 1046). She reported that Zyprexa helped with her auditory hallucinations but made her feel tired. *Id*. Her dosage was decreased. *Id*. She exhibited avoidant eye contact, delusions, hallucinations, logical thought processes, normal associations, limited insight and judgment, unremarkable cognition, and a normal fund of

knowledge. (Tr. 1048-49). On September 24, 2021, Ms. Scholfield reported feeling less sedated. (Tr. 1054). She said she was still under a lot of stress and that she was continuing to isolate herself. *Id*.

On October 22, 2021, Ms. Scholfield reported feeling stress about her upcoming Social Security hearing. (Tr. 1062). She reported intermittent auditory hallucinations, especially when her stress level was high. *Id*. She also reported that Klonopin reduced her anxiety and panic. *Id*. On examination, Ms. Scholfield displayed avoidant eye contact, delusions, hallucinations, logical thought processes, unremarkable cognition, normal associations, and limited insight and judgment. (Tr. 1064-65). On November 11, 2021, Ms. Scholfield reported lingering depression and anxiety. (Tr. 1070). She also reported that her Zyprexa dosage may have been lowered too much, and she agreed with increasing the dosage. *Id*.

On May 5, 2021, Ms. Scholfield reported experiencing an allergic reaction to Lybalvi. (Tr. 1190). That medication was discontinued and replaced with Abilify. *Id*. She reported that her auditory hallucinations had decreased. *Id*. She also said that she continued to isolate due to anxiety and paranoia. *Id*. She displayed delusions and hallucinations, avoidant eye contact, logical thought processes, unremarkable cognition, limited insight and judgment, and normal associations. (Tr. 1192-93).

On June 2, 2022, Ms. Scholfield reported that she was "hanging in there," but said that she was still isolating. (Tr. 1198). She also reported that she was trying to restart counseling because she could not rely on medications to make her better. *Id*. She said she was experiencing auditory hallucinations, but said they were not bothersome. *Id*. Ms. Scholfield was positive for delusions, hallucinations, displayed avoidant eye contact, and had limited

insight and judgment, but also displayed logical thought processes, normal speech, and unremarkable cognition. (Tr. 1200-01).

On June 30, 2022, Ms. Scholfield reported that her mood was okay but that she was continuing to isolate. (Tr. 1206). She also reported continued auditory hallucinations and paranoia, but stated that the voices were not bothersome. *Id*. On August 5, 2022, Ms. Scholfield reported continuing isolation and some paranoia. (Tr. 1214). She also reported low stress and said that she was not experiencing hallucinations. *Id*.

On November 9, 2022, Ms. Scholfield reported that her auditory hallucinations had returned and that she felt more paranoid. (Tr. 1222). She also reported that her medication was not working anymore. *Id*. Her Abilify was discontinued and replaced with Caplyta. *Id*. On examination, she exhibited delusions and hallucinations, logical thought processes, normal associations, unremarkable cognition, and limited insight and judgment. (Tr. 1225). On September 23, 2022, Ms. Scholfield reported that her auditory hallucinations had improved since she began taking Caplyta, but that the drug also made her sleepy. (Tr. 1230).

## IV.    THE ALJ'S DECISION

The ALJ first determined that Ms. Scholfield had not engaged in substantial gainful activity since June 5, 2020, the date of her application. (Tr. 13). The ALJ next determined that Ms. Scholfield had the following severe impairments: depressive disorder; bipolar disorder; panic disorder with agoraphobia; unspecified schizophrenia; borderline personality disorder; posttraumatic stress disorder (PTSD); and schizoaffective disorder, depressive type. *Id*. The ALJ determined, however, that none of Ms. Scholfield's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14).

16

The ALJ further determined that Ms. Scholfield had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: With respect to understanding, remembering and carrying out instructions, she is limited to performing simple, routine and repetitive tasks, but not at a production rate pace; With respect to the use of judgment, she is limited to simple work-related decisions; There should be no more than occasional changes in the workplace tasks and setting, and any changes should be infrequent and well explained in advance. She should be limited to occasional contacts with supervisors, occasional and superficial contacts with co-workers, and no contact with members of the public; "superficial" is defined as, able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion, or involve tandem tasks.

(Tr. 17).

The ALJ next determined that Ms. Scholfield had no past relevant work. (Tr. 25). However, the ALJ determined that, considering Ms. Scholfield's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ms. Scholfield could perform, including work as a marker, mail clerk, or routing clerk. (Tr. 25-26). Accordingly, the ALJ determined that Ms. Scholfield is not disabled. (Tr. 26).

## V.    LAW & ANALYSIS

### A.    Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the

Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

B.    **Standard for Disability**

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

"A claimant's RFC is not a medical opinion, but an administrative determination

reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Dec. 12, 2018). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17.

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g). *See Abbott*, 905 F.2d at 923.

### C.   Analysis

Ms. Scholfield argues that the ALJ erred in making changes to her RFC from the prior ALJ's decision, while at the same time finding that there was no new and material evidence that would warrant a departure from the prior decision under *Drummond v. Commissioner v. Social Security*, 126 F.3d 837 (6th Cir. 1997). Ms. Scholfield also argues that the ALJ erred at Steps Four and Five because the ALJ failed to incorporate all of Ms. Scholfield's limitations into the RFC, did not properly evaluate the opinions of Dr. Roy, and relied on an inaccurate hypothetical. For the reasons set forth below, I conclude that Ms. Scholfield's arguments are without merit.

*1.* **_The ALJ's Application of Drummond_**

Ms. Scholfield first argues that the ALJ's treatment of ALJ Banks' prior decision was internally inconsistent and violated applicable law. In particular, Ms. Scholfield argues that it was error for the ALJ to simultaneously: (1) find that there was no new and material evidence in the record that would justify a departure from ALJ Banks' decision; and (2) adopt a different RFC than the RFC that ALJ Banks adopted.

In *Drummond*, the Sixth Circuit held principles of res judicata apply in Social Security context, such that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id*. at 842. Thus, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*.

In response to *Drummond*, the SSA promulgated Acquiescence Ruling 98-4(6), which provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

In *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), the Sixth Circuit clarified *Drummond*'s scope. The court held that, while *Drummond* reached the correct result, it "overstat[ed]" its holding. *Id*. at 933. The court noted that principles of "[f]inality, efficiency, and the consistent treatment of like cases" are important in Social Security proceedings. *Id*. Accordingly, if an individual files a second application covering the

same time period as the initial application, res judicata applies unless the claimant provides a justification for revisiting the earlier decision. *Id*.

However, "a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id*. And, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id*. Thus, principles of res judicata "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931.

*Earley* emphasized that "[f]resh review is not blind review." *Id*. at 934. Thus, "[a] later administrative judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. However, by holding that res judicata does not apply to a new claim covering a new time period, *Earley* "significantly walked back administrative application" of *Drummond*. *Dilauro v. Comm'r of Soc. Sec.*, No. 5:19-cv-2691, 2021 WL 1175415, at *3 (N.D. Ohio Mar. 29, 2021).

It is not clear that the ALJ correctly applied *Earley* here. The ALJ did not cite to *Earley*, and instead cited only to *Drummond* and Acquiescence Ruling 98(4)-6. That is not, by itself, grounds for remand. *See Hoffacker v. Comm'r of Soc. Sec.*, No. 1:23-cv-01010, 2024 WL 692690, at *8 (N.D. Ohio Feb. 20, 2024) ("remand might not be warranted simply because an ALJ cited *Drummond* in support [of] their findings or failed to cite *Earley*"). Rather, "[w]hen an ALJ makes an outdated reference to the *Drummond* standard, courts have focused on whether 'the ALJ properly applied the correct legal standards in a manner consistent with the Sixth Circuit's decision in *Earley*,' rather than the outdated citation itself." *Pollard v. Comm'r of Soc. Sec.*, No. 1:22-cv-00082, 2023 WL 4706763, at *6 (N.D. Ohio

July 24, 2023) (citing *Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-CV-2015, 2020 WL 4366077, at *13 (N.D. Ohio July 30, 2020)).

Here, the ALJ also made several statements in the decision suggesting that the ALJ believed himself bound by the decision under *Drummond* absent new and material evidence to the contrary. The ALJ found, for example, that there was "not new and material evidence showing a change in circumstances relating to the determination of the present claim that warrants a deviation from the restrictions of *Drummond* and Acquiescence Ruling 98-4(6)." (Tr. 11). The ALJ also said that Ms. Scholfield's "previous impairments must remain severe unless there is new and material evidence suggesting otherwise." (Tr. 13). Similarly, at Step Four, the ALJ found that "[a]ccording to *Drummond*, although there is new evidence of treatment for the above listed impairments, the evidence does not show material change in the claimant's residual functional capacity." (Tr. 17). The ALJ further demonstrated his understanding that the prior ruling governed during Ms. Scholfield's second hearing, where the ALJ stated that "there is a prior decision from April of 2019, so I am bound by that unless there is new and material evidence . . . ." (Tr. 42).

The ALJ's apparent belief that he was bound by the prior RFC under *Drummond* absent new and material evidence to the contrary could conceivably provide a basis for remand. Indeed, several courts in this district have held that  *Earley* precludes an ALJ from reviewing a claim under the presumption that the prior decision remains correct for the subsequent claim. *See Mykael Kline v. Comm'r of Soc. Sec.*, No. 3:23-CV-00754-JRK, 2024 WL 1380814, at *8 (N.D. Ohio Mar. 11, 2024), *report and recommendation adopted*, 2024 WL 1375901 (N.D. Ohio Apr. 1, 2024) (holding that *Earley* entitles claimant to review absent presumption that prior RFC remains correct); *Bowker v. Comm'r of Soc. Sec.*, No. 5:23-CV-

00990-JDG, 2024 WL 733411, at *14 (N.D. Ohio Feb. 22, 2024); *Arendt v. Comm'r of Soc. Sec.*, No. 1:18-cv-00484, 2019 WL 1058263, at *10 (N.D. Ohio Mar. 6, 2019); *Dilauro*, 2021 WL 1175415 at *3-4 (holding that ALJ violated *Earley* despite discussing subsequent developments where ALJ viewed prior decision as mandatory starting point and *Drummond* error "permeated the entire adjudication of Plaintiff's claim").

However, Ms. Scholfield has not argued that the ALJ erred by applying a presumption of correctness to the prior ALJ's RFC. To the contrary, Ms. Scholfield appears to disclaim that argument in her reply brief, affirmatively stating that she is "not advocating" either that the ALJ erred in choosing to apply *Drummond* or that the ALJ erred in giving a fresh look to the evidence and changing the RFC. (ECF No. 13, PageID # 1409). Ms. Scholfield also states that the manner in which the ALJ "gave a fresh look and summarized the evidence, *is not the problem*." *Id*. at PageID # 1410 (emphasis in original).

Instead, Ms. Scholfield argues only that the ALJ erred in applying *Drummond* because the ALJ both: (1) found that there was not new and material evidence that justified a departure from the prior decision; and (2) made changes to Ms. Scholfield's RFC, notwithstanding the ALJ's *Drummond* finding. Specifically, the ALJ added a restriction that any changes to workplace tasks and setting should be no more than infrequent. (Tr. 17). The ALJ also changed the definition of "superficial contact" from meaning that verbal interaction is not necessary for the completion of assigned duties to meaning that the hypothetical individual can be in the proximity of others, exchange greetings, and engage in discussions that do not require persuasion or involve tandem tasks. *Id*. Ms. Scholfield asserts that the ALJ's finding that *Drummond* applies is inherently inconsistent with the ALJ's conclusion that changes should be made to the RFC and asserts that "[a] lane must be picked" between applying

*Drummond* or making changes to the RFC. (ECF No. 13, PageID # 1409).

Because Ms. Scholfield has not argued that the ALJ applied the wrong legal standard by presuming that the prior RFC was binding absent new and material evidence to the contrary, she has waived that argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (holding that issues referred to in a perfunctory manner are waived); *Fischer v. Comm'r of Soc. Sec.*, No. 1:20-cv-623, 2021 WL 795552, at *7 (N.D. Ohio Mar. 2, 2021) (holding that plaintiff waived argument by failing to raise it in merits brief). Accordingly, I will not consider whether remand is warranted on that basis.

With respect to the argument that Ms. Scholfield did raise—that the ALJ's decision is internally consistent in purportedly applying *Drummond* but also making changes to the RFC—she misunderstands the impact that *Earley* has on the ALJ's obligations. Ms. Scholfield argues that the ALJ must either adopt the prior findings of the ALJ under *Drummond* or adopt a new RFC in light of new and material evidence. However, Ms. Scholfield's present application relates to a different time period than her prior claim, and *Drummond* thus does not prevent the ALJ from taking a fresh look at the evidence and adopting an RFC that the ALJ deems appropriate in light of that evidence. *See Earley*, 893 F.3d at 931. The ALJ should not have cited to *Drummond* without acknowledging *Earley* and should not have suggested that he was potentially bound by the prior ALJ's decision.

However, notwithstanding the ALJ's improper citation to *Drummond*, the ALJ thoroughly analyzed the evidence regarding Ms. Scholfield's impairments before adopting an RFC based on that evidence. The mere fact that the RFC diverges from the prior RFC does not violate the law as it stands in the Sixth Circuit after *Earley*. I therefore recommend that the Court reject Ms. Scholfield's argument that remand is warranted under *Drummond*

because the ALJ's decision is internally inconsistent.

2.  <strong><em>Alleged Errors in Ms. Scholfield's RFC</em></strong>

In her second assignment of error, Ms. Scholfield argues that the ALJ's RFC determination is not supported by substantial evidence for three reasons: (1) the ALJ did not incorporate all reasonably supported limitations into the RFC; (2) the ALJ erred in evaluating the opinions of Dr. Roy; and (3) the RFC is based on an inaccurate hypothetical. I will consider each argument in turn.

<em>a.  <strong>Failure to Incorporate Limitations into RFC</strong></em>

Ms. Scholfield first argues that the ALJ erred in formulating her RFC because the ALJ did not include all limitations supported by the record, including that she cannot interact with more than five people at a time, would be off task more than 10% of the day, and would miss two or more days of work per month. In support, Ms. Scholfield points to her testimony and treatment notes regarding her inability to leave the house, paranoia, panic attacks, hallucinations, and self-isolation. Ms. Scholfield also disputes the ALJ's findings that her symptoms waxed and waned or that she saw improvement with medication.

As noted above, the standard for "substantial evidence" is "not high." *Biestek*, 139 S.Ct. at 1154. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court

26

may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

The ALJ thoroughly analyzed Ms. Scholfield's treatment records, noting that she frequently presented with normal speech, logical thought processes, good mood and affect, unremarkable cognition, normal insight, and fair judgment. (Tr. 18-22). The ALJ further noted that Ms. Scholfield's symptoms waxed and waned over time, and that she reported improvements in her mood, anxiety, and hallucinations at various times, at one point stating that her medication was "working really well for her." (Tr. 19-20). The ALJ further noted that Ms. Scholfield denied experiencing hallucinations at times. (Tr. 21). The ALJ also noted statements from Ms. Scholfield indicating that her depression and improved and her anxiety was more tolerable. (Tr. 19). Finally, the ALJ noted that treatment notes did not show any significant episodes of decompensation that resulted in hospitalization or increase in services. (Tr. 22).

The ALJ also acknowledged contrary evidence, including records showing that Ms. Scholfield experienced hallucinations for much of the period at issue; reported losing touch with reality in October 2019; had ongoing problems with severe social anxiety and paranoia; said that she was unable to spend time with her family or go into a store; and required adjustments to her medication at various points. (Tr. 18-22). The ALJ further acknowledged that Ms. Scholfield sometimes presented with a depressed mood and with limitations in insight and judgment. (Tr. 21). The ALJ likewise noted that Ms. Scholfield continued to experience issues with hallucinations, paranoia, anxiety, and self-isolation through September 2022. (Tr. 22). Substantial evidence supports the ALJ's determination.

Ms. Scholfield argues that the ALJ ignored certain evidence regarding her anxiety and paranoia and improperly concluded that her symptoms showed some improvement. However, "[i]t is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered" so long as the ALJ does not "selectivity include[] only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability." *Borawski v. Comm'r of Soc. Sec.*, No. 1:20-CV-01091-JDG, 2021 WL 811717, at *15 (N.D. Ohio Mar. 3, 2021); *see also Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *9 (N.D. Ohio Feb. 21, 2019) ("While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss all the evidence"). Reading the decision as a whole, the ALJ did not selectively include only the portions of the record that supported his decision, but rather discussed both positive and negative evidence regarding Ms. Scholfield's condition.

Ms. Scholfield also asserts that the ALJ erred in relying on her activities of daily living, arguing that her ability to care for her family or engage in some activities does not equate to an ability to engage in full time employment. However, the ALJ did not rely exclusively on reports of Ms. Scholfield's daily activities. Rather, the ALJ considered that evidence in conjunction with the treatment record and the medical opinions. It was proper for the ALJ to do so. *See Lawrence Comm'r of Soc. Sec.*, No. 1:21-CV-01691-JG, 2023 WL 2246704, at *13 (N.D. Ohio Jan. 19, 2023), *report and recommendation adopted*, 2023 WL 2242796 (N.D. Ohio Feb. 27, 2023) (rejecting argument that ALJ's decision should be reversed for improper reliance on daily activities "did not rely solely on [those] activities in determining that she remained capable of sedentary work with additional restrictions"); *Edwards v. Comm'r of Soc. Sec.*, No. 3:22-CV-00597, 2023 WL 2988373, at *13 (N.D. Ohio

Mar. 10, 2023), *report and recommendation adopted*, 2023 WL 3866333 (N.D. Ohio June 7, 2023) ("as the ALJ's references to the medical evidence – in combination with Edwards's daily activities – shows, the ALJ relied on more than Edwards's daily activities alone"). I thus recommend that the Court reject Ms. Scholfield's argument that the ALJ failed to properly consider the evidence in formulating her RFC.

> ### b.        *Evaluation of Dr. Roy's Opinion*

Ms. Scholfield next argues that the ALJ erred in evaluating the opinions of Dr. Roy, who opined that Ms. Scholfield had marked or moderate limitations in a number of functional categories, would be off task more than 10% of the time, and is unable to maintain gainful employment in light of her impairments. (Tr. 931-37, 1245-52).

Under the regulations applicable to Ms. Scholfield's claim, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).[1] The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 416.920c(c). Section 416.920c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20

---

[1] Because Ms. Scholfield filed her disability claim after March 27, 2017, the prior "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 416.927; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809 (Mar. 31, 2021).

C.F.R. § 416.920c(b)(1).

Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 416.920c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id*. The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 416.920c(c)(1). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 416.920c(c)(2).

While the ALJ did not specifically use the word "supportability," the ALJ adequately addressed the supportability factor by noting that Dr. Roy's opinions were inconsistent with Dr. Roy's own treatment notes, which showed that Ms. Scholfield presented with logical thought processes, fair insight and judgment, and normal cognition. (Tr. 23); *see Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-cv-01732, 2021 WL 7251036, at *9 (N.D. Ohio Oct. 29, 2021), *report and recommendation adopted*, 2022 WL 627055 (N.D. Ohio Mar. 3, 2022) (holding that ALJ addressed supportability factor by noting that physician's opinion was inconsistent with physician's treating notes).

The ALJ also adequately addressed consistency, finding that Dr. Roy's opinion was inconsistent with Ms. Scholfield's testimony regarding her ability to maintain relationships with others in the community, as well as treatment records showing that her auditory hallucinations were stable with treatment and that Ms. Scholfield presented with logical thought processes, fair insight and judgment, and normal cognition. Again, substantial evidence supports that determination. *See Merrell*, 2021 WL 1222667 at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by

substantial evidence where opinion was inconsistent with evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ properly found opinion only partially persuasive where ALJ cited treatment records ALJ believed were inconsistent with physician's opinion and explained why).[2]

Ms. Scholfield argues that the ALJ erred in evaluating Dr. Roy's opinions because those opinions are consistent with evidence showing that Ms. Scholfield experienced ongoing psychosis, auditory hallucinations, anxiety, and panic attacks. Ms. Scholfield also argues that, while the ALJ relied on treatment records indicated that Ms. Scholfield presented with logical thought processes, fair insight and judgment, and normal cognition, other treatment records showed that Ms. Scholfield continued to have ongoing issues with her mental health symptoms. As noted above, however, a reviewing court cannot overturn the decision of the ALJ so long as it is supported by substantial evidence, even if other evidence in the record would support a different conclusion. *Jones*, 336 F.3d at 477. While Ms. Scholfield cites evidence that she believes is consistent with Dr. Roy's opinions, the ALJ's determination regarding the supportability and consistency factors is supported by substantial evidence. I therefore recommend that the Court reject Ms. Scholfield's challenge to the ALJ's evaluation of Dr. Roy's opinions.

*c.*     ***Failure to Incorporate VE Testimony***

Finally, Ms. Scholfield argues that the ALJ erred because the ALJ ignored the VE's answer to a hypothetical that the ALJ formulated during the hearing. In particular, Ms. Scholfield notes that the ALJ asked the VE if the hypothetical individual could work if the

---

[2] While Ms. Scholfield does not directly raise the issue in her briefs, the ALJ also correctly found that Dr. Roy's opinion was "neither valuable, nor persuasive" (Tr. 23) to the extent Dr. Roy opined that Ms. Scholfield was unable to maintain gainful employment because that issue is reserved to the Commissioner. *See* 20 C.F.R. § 416.920b)(c)(3).

individual could not be around more than five coworkers at one time, which the VE testified would be work preclusive. (Tr. 77). Ms. Scholfield argues that a limitation to work around no more than five coworkers was supported by the record and that the ALJ should not have crafted an RFC that ignored the VE's testimony.

As the Commissioner correctly responds, however, an ALJ is not required to include limitations in an RFC that the ALJ finds are not applicable, even where the VE testifies that those limitations would be work preclusive. *See Rudd*, 531 F. App'x at 730  (holding that an ALJ is not "required to rely on a VE's response based on limitations that she rejected"); *Roberts v. Comm'r of Soc. Sec.*, No. 4:16 CV 2533, 2017 WL 5501323, at *13 (N.D. Ohio Oct. 19, 2017) ("an ALJ is not  required to rely on a VE's response to limitations the ALJ ultimately does not adopt"). Here, the ALJ did not adopt a limitation that Ms. Scholfield was precluded  from  being  around  more  than  five  coworkers  at  a  time.  Instead,  the  ALJ incorporated a different social interaction limitation, finding that Ms. Scholfield could be in the proximity of others, exchange greetings, and engage in discussions that do not involve persuasion or tandem tasks. (Tr. 17). As discussed above, substantial evidence supports the ALJ's RFC determination.

Ms. Scholfield also argues in her reply brief that remand is warranted because the hypothetical the ALJ presented to the VE is different than the RFC that the ALJ adopted in the decision. In particular, Ms. Schofield argues that the ALJ defined "able to be in the proximity of others" in hypothetical questions to the VE as limiting the individual to no more than five coworkers at a time, but then excluded that definition from Ms. Schofield's RFC. That is inaccurate. Rather, the ALJ asked the VE a hypothetical that was identical to the RFC that the ALJ adopted, and the VE responded that the hypothetical individual could work as a

marker, mail clerk, or routing clerk. (Tr. 17, 76-77). The ALJ then asked the VE a *separate* hypothetical about an individual who could not be around more than five people at a time, which the VE testified was work preclusive. (Tr. 77-78). The ALJ ultimately did not adopt that limitation, but rather adopted the original hypothetical that the ALJ asked the VE. Ms. Scholfield's argument that the ALJ's RFC differs from the hypothetical to the VE is inaccurate as a factual matter and does not furnish a basis for remand.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: November 12, 2024

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may

consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).